IRVIN BLANCHARD, Guardian, Etc., Appellant, v.
JAMES ANDREWS, Curator, Etc., Respondent.

Kansas City Court of Appeals, December 2, 1901.

1. **Guardian and Curator: TRANSFER OF FUNDS: DISCRETION
OF COURT.** The statute does not grant the transfer of a ward's
funds to a foreign guardian, as of strict right, but makes it depend
on the sound discretion of the trial court as to whether such re-
moval would be to the best interest of the ward.

2. ———: ———: ———: EVIDENCE. On an application to trans-
fer a ward's funds to a foreign guardian, the court should fully ac-
quaint itself with all the surroundings of the parties; and even the

character of the mother of the ward, who is also the wife of the foreign guardian, may be inquired into even at a time prior to her marriage to the guardian. But in this case, if such evidence were inadmissible it was harmless, since it could not change the result.

Appeal from Schuyler Circuit Court.—*Hon. Nat M. Shelton,* Judge.

AFFIRMED.

*John D. Smoot* and *Higbee & Mills* for appellant.

(1) The court should have excluded all the testimony in regard to the reputation of Mrs. Blanchard at the time she lived in Schuyler county, Missouri. She left in 1895. Since that time the witnesses knew nothing about her. All was incompetent. Wood v. Matthews, 73 Mo. 482; State v. Summar, 143 Mo. 220. (2) Even had the evidence shown Mrs. Blanchard's reputation to be bad at the time of the trial, it would have not been competent and should have been excluded. All evidence not relevant to the issues is rightly excluded. Frederick v. Allgaier, 88 Mo. 598; State v. Blunt, 91 Mo. 503; Mathias v. O'Neill, 94 Mo. 520; McDermott v. Judy, 67 Mo. App. 647. (3) This proceeding or application is warranted by section 3528, Revised Statutes 1899. In re Wilson, 95 Mo. 182. (4) If the court finds (a) that the foreign guardian has been regularly appointed in the State in which the ward resides; (b) if he is a fit person for such guardian, and (c) that sufficient security has been given, then the court may make the rule. 13 Ency. of Law (2 Ed.), 968; Leonard v. Putnam, 12 Am. Decs. 106; In matter of Stockham, 71 Mich. 160. (5) The ward's desire should be a matter of consideration by the court. In matter of Stockham, supra.

*Fogle & Eason* for respondent.

SMITH, P. J.—This is a case where the appellant, a non-resident guardian, made an application to the probate court of Schuyler county, in this State, under sections 3515 and 3516, Revised Statutes, to require the respondent, a resident curator, to pay over certain funds in his hands. . From an order of the circuit court (where the case was taken by appeal) denying the application, the case was brought here by appeal.

The trial court found its conclusions of fact, separate from its conclusions of law, as follows:

"The court finds from the evidence that the wards of plaintiff, two out of three of whom are resident in Chase county, Kansas, are the children of Louisa Ellen Blanchard, the present wife of plaintiff, by a former husband, namely, C. B. Andrews, and are the grandchildren of one Robert J. Maize, who died in Schuyler county, Missouri, in September, 1899, testate, leaving the wards of plaintiff, his grandchildren, an estate equal to one-half of one whole share of the property. That plaintiff was appointed guardian of said children by the probate court of Chase county, Kansas, in March, 1901; that they had not, at the time of the appointment, nor have they now, any estate either real, personal or mixed, situate in the State of Kansas or elsewhere, save the legacy involved in this controversy and situate in Schuyler county, Missouri. That defendant, W. J. Andrews, is the regularly appointed curator of the estate of said wards by the probate court of Schuyler county, Missouri, and now has in his possession as such curator one distribution by the administrator of the estate of Robert J. Maize in the sum of $475 and is an uncle, on the father's side, of said children. That plaintiff is a fairly well-to-do farmer of Chase county, Kansas, is the present husband of the mother of his wards and that two of his said wards have their home with plaintiff and their mother, and the third one, namely, Fred Andrews, does not now live in Kansas or with

plaintiff nor has Kansas ever been his home.    That plaintiff is
a man of good repute among his neighbors in Kansas and a
man personally fit to manage the estate of his wards.    That
the wife of plaintiff and the mother of his wards, at and prior
to her removal from Schuyler county, Missouri, in March,
1895, was a woman of bad reputation for virtue and chastity
and for frugality and economy.    That she went with her then
husband, C. B. Andrews, from Schuyler county, Missouri, to
the Territory of Oklahoma, where shortly afterwards she and
her husband Andrews were re-married and lived together a
short time and were again divorced.

"After the second divorce, a short time, she married one
Horn who was a few months thereafter shot and killed.    That
plaintiff knew of the troubles between his wife and her former
husband, Andrews, at and before his marriage to her, having
taken an active interest in the attempted prosecution of the
parties alleged to have shot Horn, the second husband of his
wife.    That he had known his wife and something of her
story for more than one year prior to his marriage to her.
That he married his wife in the early part of the year 1898,
these children being then with their father in southern Mis-
souri, or under his control there; that neither plaintiff nor his
wife manifested any interest in the whereabouts or welfare of
the children, from the date of their marriage, early in 1898,
until in November, 1899, some two months after the death of
their grandfather, Robert J. Maize, in Schuyler county, Mis-
souri, and his will had been admitted to probate from which it
appeared an estate of greater or less proportion had been left
them.    At this juncture their interest became active; the two
younger children, one aged fifteen years and the other nine
years, were hunted up in southern Missouri, bundled up with-
out the consent of their father and taken to the Kansas home
of their stepfather and their mother, where at once a guardian
was appointed for them and a spirit of active aggressiveness in

the matter of getting the possession of the little estate of these children have characterized their every move from that date to this. That the funds are in the hands of an honest and capable man as curator in Schuyler county, Missouri, who can invest the same at from six to eight per cent, when permitted to do so upon the termination of this litigation. The proof also showed that the funds, if held in Kansas could be loaned at from seven to ten per cent interest, the latter rate, I conclude from the testimony, could be obtained on chattel security. I further find that the will of Robert J. Maize, through which the legacy in controversy comes to the Andrews children, was made and executed in May, 1897, about two years prior to the visit of plaintiff and wife to Robert J. Maize, in Schuyler county, Missouri, in March, 1899, at which visit plaintiff offered to prove that the matter of the prospective interest of plaintiff's wife in her father's estate was canvassed between herself and father and that at her suggestion her father divided the share in the will giving her one-half of one share and the children the remainder. That the proof shows a present good reputation for virtue and chastity of the mother of the children at and about their present home in Kansas. That the present judge of the probate court of Chase county, Kansas, one Matt McDonald, came to Schuyler county, Missouri, in the early winter of 1901, in company with the mother of the children, and as her attorney to represent her in an effort to procure the transfer of the funds in controversy to the Kansas guardian. That he became drunk and remained for two or three days in a state of intoxication, even when presenting the case, made by his client for transfer, to the probate court of Schuyler county, Missouri. That said McDonald and petitioner or plaintiff are good friends and on intimate terms at their home in Kansas. That the expense incurred by plaintiff in the prosecution of his effort to transfer this estate to Kansas, including court costs, will approximate something like

Blanchard, Guardian v. Andrews, Curator.

$150, all of which would be properly chargeable to this estate should the order of transfer be made, as sought by petitioner, thus scaling the estate down by that amount.    That petitioner or plaintiff, the Kansas guardian, has been married three times, twice before his marriage to the mother of the Andrews children, and that from one of his former wives he was divorced, for what cause the proof does not show.

"And upon the foregoing finding of facts, being of the opinion that it is to the best interest of the wards that removal should not take place, I deny the application to transfer the funds in controversy as prayed and find for the defendant."

The statute referred to at the outset invests probate courts with the power to authorize the delivery of a ward's property to a foreign guardian.    But the transfer and delivery is not granted of strict right, but is made to depend on the judgment of the court in the exercise of a sound discretion as to whether such removal be to the best interest of the ward:   In re Wilson, 95 Mo. 184; State v. Elliott, 82 Mo. App. loc. cit. 472. In looking at the facts disclosed by the court's finding in the present case, we are unable to conclude that the act of the court in denying the application was an unsound exercise of its statutory discretion.

About the only ground upon which it is contended the transfer ought to be made, is that the money of the wards can be loaned for a higher rate of interest in the State of Kansas than in this State.    It is true that the court found that money could be loaned in Kansas at from seven to ten per cent, the latter per cent however on chattel securities, while in this State at from only six to eight per cent.

The difference in the rate of interest in the two States does not afford a persuasive reason for the transfer, and especially is this so when the fact is taken into consideration that if the estate be transferred it will go burdened with the cost and expenses incurred in prosecuting the application for the

transfer this latter amounting to something like an hundred and fifty dollars—nearly one-third of the estate—while it will be, no doubt, immune from such costs and expenses as long as it remains in the hands of the present curator. The facts in the case do not suggest a single good reason why the transfer should be ordered, but very many why it should not.

The appellant further complains of the action of the court in receiving evidence tending to prove what the reputation of the wife of the applicant—the wards' mother—for chastity and frugality was four or five years before the trial and while she resided in this State. She was not a witness, but had she been, the testimony would no doubt have been inadmissible to impeach her under the ruling made in Wood v. Matthews, 73 Mo. 483 and State v. Summar, 143 Mo. 220. But it may well be doubted whether the rule of exclusion declared in the cases just referred to can have any application in a case like this. It is quite obvious that in the investigation of a matter of this kind the court might with propriety allow the inquiry to cover quite a wide field. The court being called upon for the exercise of its discretion in a matter so important should have, as it did, fully acquainted itself with all the surrounding facts and circumstances that were in any way calculated to enlighten it, to the end that it might wisely and soundly exercise such discretion. But even if the evidence complained of was improper it was harmless. It is quite certain that if it had been excluded from consideration, the court's conclusion could not have been different. If the applicant's wife is, as we must presume is the fact, "not only virtuous but above suspicion," still, we can not think that it would be for the interest of the wards that the transfer be made.

Accordingly, the judgment will be affirmed. All concur.